UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES KLEIN,<br><br>    Plaintiff,<br><br>    v.<br><br>DELBERT SERVICES CORPORATION,<br><br>    Defendant. | Case No. 15-cv-00432-MEJ<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 7 |

## INTRODUCTION

Plaintiff Charles Klein brings this action under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and California's Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32, alleging unlawful debt collection practices by Defendant Delbert Services Corporation ("Delbert"). Pending before the Court is Delbert's Motion to Compel Arbitration and to Dismiss or Stay Action. Dkt. No. 7. Klein has filed an Opposition (Dkt. No. 14) and Delbert filed a Reply (Dkt. No. 19). The Court finds this matter suitable for disposition without oral argument and VACATES the April 30, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Delbert's Motion for the reasons set forth below.

## BACKGROUND

Around January 2012, Klein obtained a personal loan from CashCall, Inc. Compl. ¶ 7, Dkt. No. 1; Meeks Decl. ¶ 6, Dkt. No. 7-2. At the time he submitted his online loan application, Klein was provided with a document titled *CashCall, Inc. Promissory Note and Disclosure Statement*, dated January 11, 2012 (the "Note"). Meeks Decl. ¶ 7; Ex. A.[1] In order to execute the

---

[1] Klein objects to Delbert's inclusion of the Note with Meeks' Declaration, arguing that it fails to contain any signatures or checkboxes, and the document therefore "lacks foundation in that it is

Note and receive his loan proceeds, Klein was required to check several boxes during the online application process. *Id.* ¶ 8. The first box that Klein checked represented confirmation of the following:

> YOU CERTIFY THAT YOU HAVE READ AND UNDERSTAND THIS ARBITRATION PROVISION AND AGREE TO BE BOUND TO ITS TERMS.

*Id.* ¶¶ 7-8; Ex. A at 5.

Under the heading "Arbitration Provision," the Note sets out the agreement to arbitrate all disputes. *Id.* ¶ 7; Ex. A at 3-5. In particular, the Note provides that "all disputes . . . against [CashCall] and/or related third parties shall be resolved by binding arbitration . . . ." *Id.*, Ex. A at 4. According to the Note, the term "dispute" includes "all claims based upon a violation of any state or federal . . . statute," and all claims asserted against Klein. *Id.* at 3-4. The Note specifies that it applies to claims against "related third parties" and defines "related third parties" as agents of CashCall. *Id.* at 4.

The Note specifies that Klein acknowledges and agrees that by entering into the arbitration provision:

> **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; [AND]**
>
> **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**

---

not what they purport it to be and is in violation of Federal Rule of Evidence, Rule 901(a)." Pl.'s Obj., Dkt. No. 15. However, Del Meeks is CashCall's Chief Financial Officer ("CFO"), and his declaration establishes that he has sufficient knowledge to lay the foundation for the business records at issue. Meeks Decl. ¶¶ 2-7. Specifically, Mr. Meeks declares that: (1) he is the CFO for CashCall; (2) he is personally familiar with the documents, books and records prepared by CashCall in its regular course of business, (3) CashCall maintains records of all its transactions with its borrowers in the regular course of its business, (4) CashCall's practice is to record transactions, acts, conditions and events concerning CashCall and its customers when they occur, and (5) he personally reviewed CashCall's documents, books, and records (including the Note at issue) to the extent necessary to prepare his declaration. *Id.* ¶¶ 2-4. As such, Mr. Meeks' Declaration is sufficient under Federal Rules of Evidence 803(6) to establish that the electronically executed Note is what it purports to be—an agreement between Klein and CashCall. Further, the Note contains four separate boxes with checkmarks, which, as described below, indicates Klein's acceptance of the Note's arbitration provisions. Meeks Decl., Ex. A at 5-6. Accordingly, Klein's objection is OVERRULED.

2

*Id.* (emphasis in original).

The Note provides for arbitration before either the American Arbitration Association or JAMS (or as otherwise agreed by the parties), and that the arbitration hearing will be conducted in the county of Klein's residence. *Id.* at 4-5. Under the Note, CashCall, upon request, will pay Klein's portion of the arbitration expenses, including the filing, administrative, hearing, and arbitrator's fees. *Id.* at 4.

The Note provided Klein with the right to opt out of the arbitration agreement. *Id.* at 5 ("OPT-OUT PROCESS"). Specifically, Klein had 60 days after January 11, 2012, to opt out of arbitration entirely by notifying CashCall of his intentions in writing. *Id.* There is no evidence that Klein opted out.

Upon Klein's execution of the Note by way of electronic signature on January 11, 2012, CashCall funded his loan. Meeks Decl. ¶ 9.

Around May 2014, CashCall engaged Delbert to perform collection activities on Klein's account. *Id.* ¶ 12; Guzman Decl. ¶ 2, Dkt. No. 7-1. After being engaged, Delbert made periodic attempts to contact Klein by telephone. Guzman Decl. ¶ 3. Delbert also contacted Klein by letter dated October 20, 2014, offering a "special offer" to resolve the outstanding debt for a significant reduction. Compl. ¶ 12. The letter included a sentence that read: "If you do not call our office on or before October 31, 2014 to accept this one time deal, this offer will become null and void." *Id.* ¶ 14. Klein called Delbert on October 31, 2014, with the intention of accepting the offer. *Id.* ¶ 15. However, he was told that Delbert had already sold the debt on October 23, 2014. *Id.* ¶ 16. Prior to this call, Klein maintains that he was never informed by Delbert that the offer had been revoked. *Id.* ¶ 17.

Klein filed the present Complaint on January 30, 2015, alleging that Delbert "used a false, deceptive, or misleading representation or means in connection with the collection of a debt," and therefore violated the FDCPA and the Rosenthal Act. *Id.* ¶ 18. Klein alleges that the entity to whom the alleged debt has been sold has proceeded to engage in unfair harassment, which would not have otherwise occurred had Delbert honored its October 31, 2014 deadline. *Id.* ¶ 19.

3

1	Delbert now moves to compel arbitration, arguing that Klein executed the Note as part of
2	the CashCall loan, under which he agreed to arbitrate any dispute that he had with CashCall and
3	its agents, including Delbert. Mot. at 1.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to settle a controversy through arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA placed arbitration agreements on equal footing with other contracts and created a federal policy in favor of arbitration. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2001); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 n.8 (9th Cir. 1991) ("The [FAA] reflects the strong Congressional policy favoring arbitration by making such clauses 'valid, irrevocable, and enforceable.'" (quoting 9 U.S.C. § 2)).

Under the FAA, "[a] party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). When such a request is made, the court must determine whether an arbitration agreement exists and whether it encompasses the dispute at issue. *Id.*; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, courts have consistently applied a "liberal federal policy favoring arbitration agreements." *Id.* at 24.

A motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986). Moreover, arbitration should be denied if the court finds "grounds as exist at law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The court applies ordinary state-law principles governing the formation of contracts to carry out this task. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072

4

(9th Cir. 2007).

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of Am.*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 07, 2011) (citing *Perez v. Maid Brigade, Inc.*, 2007 WL 2990368, at *3 (N.D. Cal. Oct. 7, 2007)).

**DISCUSSION**

Here, the Note specifies that it is governed by California law and that the arbitration provision is governed by the FAA. Meeks Decl. ¶ 7; Ex. A at 3. Klein argues that Delbert sets forth no admissible evidence that he voluntarily signed the Note or voluntarily checked the boxes. Opp'n at 8. The Court disagrees.

It is well settled that "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648. Thus, when a party disputes "the making of the arbitration agreement," the FAA requires that the "court [ ] proceed summarily to the trial thereof" before compelling arbitration under the agreement. *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (citing 9 U.S.C. § 4). The court's inquiry encompasses "not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause." *Id.* (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). As the Ninth Circuit clarified in *Sanford*, "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Id.* (emphasis in original).

Under California contract law, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Here, there is no question that the parties were capable of contracting and that the arbitration agreement related to a lawful matter. Nor can there be any dispute as to whether the arbitration agreement was supported by

sufficient consideration.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (an employer's promise to be bound by the arbitration process itself serves as adequate consideration); *see also Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other."), *overruled on other grounds by Rosenthal v. Great Western Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996).  Thus, the question of the validity of the arbitration agreement at issue in this case pertains to whether Klein actually consented to the agreement.

The Note is a written agreement between Klein and CashCall.  Klein executed the Note via certified digital signature, which is a valid form of signature.  *See* 15 U.S.C. § 7001(a) ("Notwithstanding any statute, regulation, or other rules of law . . . (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.").  Pages 3 through 5 of the Note set forth the terms of the arbitration agreement.

The Note specifies that it applies not only to CashCall, but also to "related third parties," which include agents of CashCall.  Meeks Decl., Ex. A at 4.  However, agents of CashCall would be entitled to the benefit of the arbitration provisions of the Note even without the inclusion of that language in the Note.  *See, e.g.*, *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d. 825, 832 (N.D. Cal. 2007) ("agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents . . . and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause . . . ."); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) ("If, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the [defendant], then they are entitled to the benefit of the arbitration provisions." (citations omitted)).  Thus, Delbert—as CashCall's agent—can enforce the arbitration provisions of the Note against Klein.

1    Further, the Court finds that Klein's causes of action are encompassed by the arbitration
2    provisions of the Note.  "To require arbitration, [the plaintiff's] factual allegations need only
3    'touch matters' covered by the contract containing the arbitration clause . . . ."  *Simula, Inc. v.*
4    *Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (arbitration clause providing for arbitration of all
5    disputes "arising in connection with" parties' development agreement broadly construed as
6    reaching every dispute between parties having significant relationship to agreement and all
7    disputes having their origin or genesis in agreement.).  When determining whether the arbitration
8    clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability."
9    *Id.*; *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal. App. 4th 227, 230
10   (1999) (explaining that any "doubts as to the scope of an agreement to arbitrate are to be resolved
11   in favor of arbitration." (citations omitted)).

12   Under the Note, Klein agreed that all disputes between him and CashCall—and between
13   him and CashCall's agents—would be resolved by binding arbitration.  Meeks Decl., Ex. A at 3-5.
14   According to the Note, the term "dispute" includes "all claims based upon a violation of any state
15   or federal . . . statute," and includes all claims "relating directly or indirectly to" the agreement.
16   *Id.* at 3.  Such language should be construed broadly.  *See, e.g.*, *Prima Paint Corp. v. Flood &*
17   *Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967) ("any controversy or claim arising out of or
18   relating to this Agreement" is a broad arbitration clause); *see also Chiron*, 207 F.3d at 1131
19   (clause requiring arbitration of any dispute "relating to" agreement "broad and far reaching").
20   Moreover, courts have held that claims necessarily "touch upon" the parties agreement where, as
21   here, the claims relate to a relationship that would not have existed "but for" the agreement; such
22   claims "touch upon" the parties' agreement because they "stem[] from the parties' relationship."
23   *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 993 (S.D. Cal. 1999).

24   Klein's causes of action are based on allegations that Delbert's collection activities
25   violated the Rosenthal Act and the FDCPA.  Compl. ¶ 18.  These causes of action fall squarely
26   within the terms of the arbitration clause of the Note.  Thus, based on the broad reach of the
27   arbitration clause and the policy of resolving all doubts as to the scope of an agreement to arbitrate
28   in favor of arbitration, the Court finds that Klein's causes of action against Delbert are

1    encompassed by the arbitration clause of the Note.  Therefore, the FAA mandates that this action
2    be directed to arbitration.  *See Chiron*, 207 F.3d at 1130 ("By its terms, the [FAA] 'leaves no place
3    for the exercise of discretion by a district court, but instead mandates that district courts shall
4    direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been
5    signed.'" (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985))).

6          Klein argues that Delbert "fail[s] to provide evidence of Plaintiff's alleged signature and
7    alleged check-boxes." Opp'n at 8.  However, the Note contains four separate checkmarks.  Meeks
8    Decl., Ex. A at 5-6.  Under the FAA, an electronic signature is any "electronic sound, symbol or
9    process, attached or logically associated with a contract or other record and executed or adopted
10   by a person with intent to sign the record." 15 U.S.C. § 7006(5)  Further, Delbert has established
11   that, in order for Klein to execute the Note and receive his loan proceeds, he was required to
12   confirm his agreement to the terms of the loan, including the arbitration agreement, by checking
13   the boxes during the online application process.  Meeks Decl. ¶ 8.  Thus, the checkmarks are
14   sufficient to establish Klein's acceptance of the terms of the Note and the arbitration provision.
15   *See* 15 U.S.C. § 7001(a) ("(1) a signature, contract, or other record relating to such transaction
16   may not be denied legal effect, validity, or enforceability solely because it is in electronic form;
17   and (2) a contract relating to such transaction may not be denied legal effect, validity, or
18   enforceability solely because an electronic signature or electronic record was used in its
19   formation."); *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 731 (N.D. Cal. 2012) *aff'd*,
20   549 F. App'x 692 (9th Cir. 2013) ("Under ESIGN [the Electronic Signatures in Global and
21   National Commerce Act], electronic records and signatures that are in compliance with ESIGN are
22   legally binding."); *Small Justice LLC v. Xcentric Ventures LLC*, 2014 WL 1214828, at *4 n.2 (D.
23   Mass., Mar. 24, 2014) ("The E-Sign Act, 15 U.S.C. § 7001, recognizes that the click of a button
24   online can replace an actual signature.").

25         Finally, although federal substantive law applies to arbitration agreements governed by the
26   FAA, generally applicable state-law contract defenses, such as fraud, duress, or unconscionability,
27   may be applied to invalidate arbitration agreements.  9 U.S.C. § 2; *Rent-A-Ctr.*, 561 U.S. at 68.
28   "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable

for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted). Here, the arbitration provisions of the Note are clearly disclosed, with the agreement to arbitrate and the consequences of such an agreement listed in bold, capitalized language. Meeks Decl., Ex. A at 4. In order to execute the Note and receive his loan proceeds, Klein was required to check a box representing confirmation that he had read and understood the arbitration section of the Note and that he agreed to be bound by the terms and conditions of that section. *Id.* at 5. The Note provides for arbitration before either the American Arbitration Association or JAMS—both of which are nationally recognized and reputable alternative dispute resolution providers. *Id.* at 4. Moreover, the Note provides that all costs of the arbitration are to be paid by CashCall or its agent, the arbitration hearing will be held in the county in which Klein resides, and the arbitrator is required to apply applicable substantive law and can award statutory damages, reasonable attorney's fees, and expenses. *Id.* at 4-5. The Court also notes that Klein had the right to opt out of the arbitration agreement entirely, *id.* at 5, but there is no evidence that he did. In sum, the Court finds that the arbitration provisions of the Note are clearly disclosed and unambiguous, and there is no evidence of fraud, duress, or unconscionability. Accordingly, the Court shall compel arbitration.

## CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Delbert's Motion to Compel Arbitration. As part of its Motion, Delbert requests that the Court dismiss the Complaint or, alternatively, stay this action pending the conclusion of arbitration. Mot. at 10. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Nevertheless, courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (finding dismissal proper rather than a stay of plaintiffs' claims that were subject to arbitration); *Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020, at \*10 (N.D. Cal. June 11, 2014) (listing cases from this District in which courts dismissed cases upon granting a motion to

compel arbitration). Because Klein's claims are subject to arbitration, the Court finds that dismissal of the action is appropriate. Accordingly, the case is **DISMISSED**. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: April 1, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge